STATE OF NORTH CAROLINA v. TRANQUERE SANCHEZ IRONS

No. COA07-909

(Filed 4 March 2008)

**Burglary— second-degree—evidence sufficient**

There was sufficient evidence of second-degree burglary where defendant argued that the State did not prove an intent to commit armed robbery at the time of the breaking and entering of the victim's motel room. The victim was not present the first time that defendant and others forcibly entered the motel room, but the evidence was more than sufficient to show defendant's intent to commit armed robbery when the victim returned to his room.

STATE v. IRONS

[189 N.C. App. 201 (2008)]

Furthermore, the evidence was sufficient to show a constructive breaking when the victim was controlled and forced into the room while being assaulted.

Appeal by defendant from judgment dated 26 September 2006 by Judge Thomas D. Haigwood in Robeson County Superior Court. Heard in the Court of Appeals 6 February 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Mabel Y. Bullock, for the State.*

*Jarvis John Edgerton, IV for defendant-appellant.*

BRYANT, Judge.

Tranquere Sanchez Irons (defendant) appeals from a judgment dated 26 September 2006 and entered consistent with a jury verdict finding defendant guilty of second-degree burglary, robbery with a dangerous weapon, and felony conspiracy. For the reasons given below, we find no error.

*Facts*

The evidence at trial tended to show that on 9 February 2006, Kevin Leach (Leach) was staying at the Redwood Motel in Lumberton, North Carolina when his cousin, Anthony McRay (McRay) and another individual named Tyrone Davis (Davis) approached Leach as he returned to his motel room. Leach allowed McRay and Davis to enter his room where both individuals asked Leach if they could have five dollars. After Leach gave them the money, McRay and Davis left the hotel room. Leach testified he saw them get into a white Cadillac with another man and drive away. Leach also testified that because his cousin McRay was known for stealing and McRay saw where he kept his money, Leach placed his remaining money in his socks before leaving his room to place a call at the phone booth located in the front of the motel. Leach testified that as he was leaving the motel room, he saw defendant driving by in a gold Ford Explorer. Defendant asked Leach if he needed anything and Leach indicated that he did not.

While Leach was placing the phone call, he saw the white Cadillac return to the motel. Leach ended the phone call and headed back to his room. When Leach turned the corner, he saw defendant and other men standing at the corner. When Leach walked around the

individuals, he saw his cousin, McRay, standing by the door of his motel room. Leach noticed that the lock on his motel room door was broken and the door was pushed in. Leach attempted to turn around and go back to the motel office when defendant approached him and "pulled a gun out" on him. When Leach began screaming, another individual nicknamed "Boots," struck Leach. Leach testified there were four individuals, including defendant and Boots, that approached him. After Boots struck him, Leach was pushed into his motel room. Defendant kept the gun on Leach while his cousin, McRay, demanded the rest of Leach's money. At this point, defendant cocked the trigger on the gun. Leach then told the men that the money was hidden in his sock. One of the individuals removed Leach's left sock and found five twenty-dollar bills. After defendant cocked the trigger on the gun again, Leach informed the individuals that his remaining money was in his right sock. After the individuals removed the money, they began to leave as Boots fired a pistol into the air. The men then ran from the motel room.

After the men left, Leach called the police. Officer Marcus Norton was on patrol duty with the Lumberton Police Department on 9 February 2006. Officer Norton testified he responded to the call at the Redwood Motel. He also testified that later that evening, he saw a white Cadillac fitting the description given by Leach with six individuals inside, including defendant. He stopped the car and awaited backup before approaching the car.

Officer Chris Germaine testified he was on duty with the Robeson County Sheriff's Department on the night of 9 February 2006. Officer Germaine testified he arrived at the location where Officer Norton stopped the white Cadillac, he searched the car, and photographed it. Officer Germaine also testified that on the morning of 10 February 2006, he took two statements from Defendant wherein defendant admitted being present at the Redwood Motel, but denied any involvement in the robbery of Leach.

On 8 May 2006, defendant was indicted on one count each of second-degree burglary, robbery with a dangerous weapon, and felony conspiracy. On 26 September 2006, a jury returned a verdict finding defendant guilty of all three charges. In a judgment dated 26 September 2006, defendant was sentenced to a minimum of 77 months and a maximum of 102 months imprisonment. Defendant appeals the second-degree burglary conviction.

Defendant raises one issue on appeal: whether defendant's conviction for second-degree burglary must be vacated because there was insufficient evidence of each element of the crime charged.

### Standard of Review

The standard of review for a motion to dismiss in a criminal case is "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Pointer*, 181 N.C. App. 93, 95, 638 S.E.2d 909, 911 (2007) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). In ruling on a motion to dismiss, the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992).

### I

Defendant argues the State failed to prove that defendant intended to commit the felony of robbery with a dangerous weapon inside Leach's motel room at the time of the breaking and entering. We disagree.

"The constituent elements of second-degree burglary are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or sleeping apartment (5) of another (6) with the intent to commit a felony therein." *State v. Key*, 180 N.C. App. 286, 292, 636 S.E.2d 816, 821 (2006) (quotation omitted); *see also* N.C. Gen. Stat. § 14-51 (2007). Although a burglary indictment is no longer required to state the specific felony a defendant intended to commit, *State v. Worsley*, 336 N.C. 268, 281, 443 S.E.2d 68, 74 (1994), "when the indictment alleges an intent to commit a particular felony, the State must prove the particular felonious intent alleged," *State v. Wilkinson*, 344 N.C. 198, 222, 474 S.E.2d 375, 388 (1996) (quoting *State v. Faircloth*, 297 N.C. 389, 395, 255 S.E.2d 366, 370 (1979)).

In this case, the indictment for second-degree burglary specifically alleged that defendant "broke and entered with the intent to commit a felony therein, Robbery With a Dangerous Weapon[.]" The essential elements of robbery with a dangerous weapon are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person

STATE v. IRONS

[189 N.C. App. 201 (2008)]

is endangered or threatened." *State v. McCree*, 160 N.C. App. 19, 30, 584 S.E.2d 348, 356 (2003). Here, the question is not whether there is sufficient evidence of robbery with a dangerous weapon but whether there is sufficient evidence of defendant's intent at the time he broke and entered Leach's motel room.

A "breaking" is any act of force, however slight, used to gain entrance through any usual or unusual place of ingress, whether open, partly open, or closed. *State v. Jolly*, 297 N.C. 121, 128, 254 S.E.2d 1, 5-6 (1979). "A breaking may be actual or constructive." *Id.* "A constructive breaking occurs where entrance is obtained in consequence of violence commenced or threatened by defendant." *Id.*

The evidence at trial tended to show that Leach was not present the first time defendant and the other individuals forcibly entered Leach's motel room to look for money by breaking the lock. However, the evidence shows that when Leach attempted to return to his motel room, he was approached by defendant who pulled out a gun while another individual hit Leach and forced Leach into his room where he was then robbed at gunpoint. Defendant argues this evidence is insufficient to show he intended to commit robbery with a dangerous weapon in the unoccupied room at the time he broke the lock and entered the room. However, the evidence is more than sufficient to show that defendant intended to commit robbery with a dangerous weapon at the time Leach returned to his motel room and attempted to reenter. Further, the evidence is sufficient to show that a constructive breaking occurred when Leach was directly controlled and forced into the motel room at gunpoint while being physically assaulted. *See Jolly*, 297 N.C. 121, 254 S.E.2d 1 (pushing victim into the hotel room as he opened the door was constructive breaking sufficient to sustain a charge of second degree burglary). Therefore, we hold the State presented sufficient evidence of each element of second-degree burglary. Accordingly, this assignment of error is overruled.

No error.

Judges HUNTER and JACKSON concur.